UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X

ELENE MICHEL,

                    Plaintiff,

                                                    <u>**MEMORANDUM AND ORDER**</u>

          -against-                                 17-CV-1893 (KAM)(RML)


UNITED STATES OF AMERICA; DUKE TERRELL,
Warden of MDC Brooklyn Individually and
in Official Capacity As Officer,
ROLANDO NEWLAND, MD-Clinical Director;
Individually and in Official Capacity
As Officer, SIXTO RIOS, MLP;
Individually and in Official Capacity
As Officer, ROSA SOROYA, MLP,
Individually and in Official Capacity
As Officer,

                    Defendants.

--------------------------------------X

**MATSUMOTO, United States District Judge:**

          On May 26, 2016, *pro se* plaintiff Elene Michel

commenced this action, alleging that she received inadequate

medical care from 2007 to 2013 during her time as an inmate at

Metropolitan Detention Center in Brooklyn, New York ("MDC

Brooklyn"), in violation of *Bivens v. Six Unknown Named Agents*,

403 U.S. 388 (1971) ("*Bivens*") and the Federal Tort Claims Act

("FTCA"), 28 U.S.C. §§ 1346, 2671 *et seq*.  (ECF No. 1, Complaint

("Compl.").)  Plaintiff initially brought this action against

defendants Duke Terrell; Rolando Newland; Rios Sixto; and Soroya

Rosa (sued herein as "Rosa Soroya"); A. Washington-Aducci; Ella

Taylor; L. McCullar; R. Griffin; Federal Bureau of Prisons-FCI; and Federal Bureau of Prisons-MDC-Brooklyn. (*Id.*) On March 7, 2018, plaintiff filed the operative second amended complaint against the United States of America (substituted for BOP-MDC Brooklyn) and individual defendants Terrell, Newland, Rios, and Rosa, who, during the relevant time, were or are employed at MDC-Brooklyn. (ECF No. 38, Second Amended Complaint ("SAC").)

Presently before the court is defendants' motion to dismiss. For the reasons stated below, defendants' motion to dismiss is granted in in part and denied in part.

### BACKGROUND

## I.  **Factual History**

Plaintiff was housed at MDC Brooklyn from July 12, 2007 until October 22, 2013, when she was transferred to the Federal Correctional Institution in Aliceville Alabama ("FCI-Aliceville"). (Compl. at 4, 36.[1]) Plaintiff alleges that while at MDC, she suffered from a variety of medical issues and that she was either denied sufficient medical care or provided inadequate medical care. (*See generally* SAC.) The court describes these issues in more detail below.

Plaintiff alleges that she suffered a concussion when she fell and hit her head on August 5, 2008. (SAC at 4.)

---

[1] For all of the *pro se* plaintiff's filings, the court refers to the page numbers generated by the court's electronic filing system.

Plaintiff received care from defendant Rios, which did not include administration of a Magnetic Resonance Imaging (MRI) scan. (*Id.*) Plaintiff claims that her head remained swollen for months and that she suffered from daily headaches. (*Id.* at 4, 22.) The defendants failed to approve an MRI scan for plaintiff for years, though plaintiff ultimately received one on January 23, 2013. (SAC at 4, Ex. A-5 at 23.) The radiologist who administered the scan reported a "[n]ormal MR of the brain," though there "appeare[d] to be fluid in the right petrous apex air cells." (*Id.* at 23.) Around June or July 2015, plaintiff began to hear constant noise in her head and suffered from poor memory, lost cognitive function, and difficulty seeing. (SAC at 22.)

Plaintiff alleges that MDC did not have an OB/GYN on staff from July 2007 to January 2012. (SAC at 5.) Plaintiff also alleges that she raised her need for OB/GYN care with MDC staff, but languished in pain for years before MDC hired an onsite OB/GYN in January 2012. (SAC at 5-6, 10.) On March 22, 2012, plaintiff received treatment for uterine fibroids, non-cancerous growths in the uterus, and menorrhagia, abnormally heavy or prolonged periods, at New York Downtown Hospital. (*Id.* at 10-11; Ex. C at 15-17.) Plaintiff received the following treatments: (i) hysteroscopy, use of a light and camera to observe the uterine lining for abnormalities; (ii) dilation and

curettage, a procedure to remove tissue from the uterus; (iii) abdominal myomectomy, a procedure to remove fibroids; and (iv) excision of an ovarian cyst.  (SAC at 10-11, Ex. C at 15—17, Ex. E at 10-11; ECF No. 59, Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Untimely Claims ("Mem.") at 4, nn. 4—5.)  Plaintiff claims that the MDC staff refused to take her to her follow-up appointment with the doctor at the New York Downtown Hospital, which was scheduled for 10-14 days after her release from the hospital.  (SAC at 6, 11, Ex. E at 12-14, Ex. C at 15-17.)

Plaintiff claims that defendant Rosa canceled a B-vitamin prescription plaintiff was written by the MDC's OB/GYN on May 6, 2013.  (SAC at 6.)  Plaintiff also alleges that Rosa never followed-up on the OB/GYN's referral for plaintiff to see a dermatologist.  (*Id.*)

## II.  Procedural History

Plaintiff alleges that she exhausted her administrative remedies in accordance with the Prison Litigation Reform Act ("PLRA") when she "verbally complained for five years" to the MDC staff.  (SAC at 31.)  Plaintiff also stated that she wrote informal requests known as cop-outs to defendants Terrell and Newland when she was told by the medical staff that the facility was still waiting for an onsite OB/GYN to be hired, but that she received no reply from them.  (*Id.*)  Plaintiff

included four such informal requests to the MDC staff dated September 10, 2010, August 22, 2011, October 8, 2011, and December 24, 2011, in which she sought medical treatment from an OB/GYN or a visit to the hospital.  (SAC, Exs. 8A-8D at 34-37.) Plaintiff alleges that despite her request, she was never given further administrative remedy forms by the MDC staff and was told to write more cop-outs.  (SAC at 31.)

On October 22, 2013, plaintiff was transferred from MDC Brooklyn to FCI-Aliceville.  On February 24, 2014, plaintiff filed a regional administrative remedy appeal (a BP-230 form, also known as a BP-10 form) asserting untimely and inadequate health care at MDC Brooklyn.  (ECF No. 55-1, Ex. G-6 at 6.)

Plaintiff also alleges that she filed an SF-95 claim on May 24, 2016. (SAC at 38, Ex. A at 39-40 (containing a signed SF-95 form dated May 24, 2016).)  Plaintiff claims she gave this form to the FCI-Aliceville staff on May 24, 2016 for mailing to the BOP's Office of General Counsel and that she gave a copy of this form to prison officials on June 10, 2016 for mailing to the BOP's Southeast Regional Office.  (SAC at 38.)  The SF-95 form states that plaintiff sustained a "head injury that [was] never treated" and that she "sustained extensive damage to her reproductive organs, due to years of waiting for the facility to provide OBGYN care."  (*Id.*)

Plaintiff filed her initial federal court complaint on May 26, 2016 in the Northern District of Alabama alleging inadequate care during her time at MDC Brooklyn and FCI-Aliceville.  (Compl.)  The Northern District of Alabama found the claims arising from MDC Brooklyn and FCI-Aliceville "legally distinct" and severed the claims against then-defendants BOP and MDC Brooklyn and the current individual MDC employee defendants. (ECF No. 12, February 21, 2017 Report and Recommendation ("R&R"); ECF No. 15, March 28, 2017 Order Adopting R&R.)  The claims against those defendants were then transferred to the Eastern District of New York.  (*Ibid.*)

Plaintiff subsequently amended her complaint, substituting defendant United States of America for defendants BOP and MDC Brooklyn.  (ECF No. 30-1, Amended Complaint ("Am. Compl.").)  Thereafter, on March 7, 2018, plaintiff filed a Second Amended Complaint, bringing claims of deliberate indifference to her medical needs under *Bivens* and negligence under the FTCA.  (SAC at 2.)

**LEGAL STANDARD**

**I.   Motion to Dismiss Pursuant to Rule 12(b)(6)**

"In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'"  *Operating Local 649 Annuity Trust Fund v. Smith Barney*

6

*Fund Mgmt. LLC,* 595 F.3d 86, 91 (2d Cir.2010) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).  When considering a 12(b)(6) motion, a court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  *See Twombl*y, 550 U.S. at 555-57.  The court "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

Further, courts must construe *pro se* pleadings and briefs liberally, "reading such submissions to raise the strongest arguments they suggest." *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir.2007) (internal quotation marks omitted); *accord Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976))).  Even with a *pro se* plaintiff, however, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).  Therefore, although the court is "obligated to draw the most favorable inferences" that the complaint supports, it "cannot invent

factual allegations that [the plaintiff] has not pled." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

**DISCUSSION**

## I.   Timeliness of FTCA Claims

"The FTCA requires that a claimant exhaust all administrative remedies before filing a complaint in federal district court." *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005). "FTCA exhaustion is governed by 28 U.S.C. § 2401(b), which provides that a claimant must file an administrative tort claim with the BOP Regional Office where the claim occurred[.] *Accolla v. U.S. Gov't*, 668 F. Supp. 2d 571, 573 (S.D.N.Y. 2009), *aff'd,* 381 F. App'x 71 (2d Cir. 2010). "The form created for this purpose is Form SF-95." *Id.*

"[A] claim shall be deemed to have been presented when a Federal agency receives from a claimant . . . an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain[.]" 28 C.F.R. § 14.2 (a). A plaintiff "needs to file form SF-95 rather than form BP-8 to exhaust for purposes of the FTCA." *Treasure v. United States*, 2019 WL 1243877, at *3 (E.D.N.Y. Mar. 18, 2019); *see also Jiminez v. United States*, 2013 WL 1455267, at *5 (S.D.N.Y. Mar. 25, 2013) ("Although Plaintiff had to file multiple forms—BP-8, BP-229, BP-230(13), BP-DIR-11—in order to

8

exhaust administrative remedies prior to filing a *Bivens* action, these exhaustion requirements did not apply to his FTCA claim.").

The FTCA establishes that "a tort claim against the United States 'shall be forever barred' unless it is presented to the 'appropriate Federal agency within two years after such claim accrues' and then brought to federal court 'within six months' after the agency acts on the claim." *United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1629 (2015). However, the "time limits in the FTCA are just time limits, . . . [and] a court can toll them on equitable grounds." *Id.* at 1633. "To qualify for [equitable tolling,] the [plaintiff] must establish that extraordinary circumstances prevented him from filing his [claim] on time, and that he acted with reasonable diligence throughout the period he seeks to toll." *Phillips v. Generations Family Health Ctr.*, 723 F.3d 144, 150 (2d Cir. 2013) (citation omitted). "Equitable tolling is a rare remedy to be applied in unusual circumstances" and should not be premised on "lack of education, *pro se* status, or ignorance of the right to bring a claim." *Watson v. United States*, 865 F.3d 123, 133 (2d Cir. 2017).

"Federal law determines the date that an FTCA claim accrues." *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 139 (2d Cir. 2011) (citing *Syms v. Olin Corp.*, 408 F.3d 95,

107 (2d Cir. 2005)).  Generally "under the FTCA a tort claim
accrues at the time of the plaintiff's injury, although in
certain instances, particularly in medical malpractice cases,
accrual may be postponed until the plaintiff has or with
reasonable diligence should have discovered the critical facts
of both his injury and its cause."  *Barrett v. United States*,
689 F.2d 324, 327 (2d Cir. 1982).  "A claim will accrue when the
plaintiff knows, or should know, enough 'to protect himself by
seeking legal advice.'"  *A.Q.C. ex rel. Castillo*, 656 F.3d at
140 (citing *Kronisch v. United States*, 150 F.3d 112, 121 (2d
Cir. 1998) (internal quotation marks omitted)).

   "The diligent-discovery rule protects plaintiffs who
are either experiencing the latent effects of a previously
unknown injury or struggling to uncover the underlying cause of
their injuries from having their claims time-barred before they
could reasonably be expected to bring suit[.]"  *Id.*  This rule
protects plaintiffs at the same time that it "avoids unduly
extending the limitations period for those who could have timely
presented their claim . . . had they acted diligently in
protecting their interests."  *Id.*  "A plaintiff does not need to
'know each and every relevant fact of his injury or even that
the injury implicates a cognizable legal claim'" for the claim
to accrue.  *See Ojo v. United States*, 2019 WL 3852391, at *4
(E.D.N.Y. Aug. 15, 2019) (citation omitted).

Plaintiff was housed at MDC Brooklyn from July 12, 2007 until October 22, 2013, when she was transferred to FCI-Aliceville. (Compl. at 4, 36.) Plaintiff brings her FTCA claims by alleging that the MDC Brooklyn staff denied her treatment relating to a head injury and obstetrical/gynecological care. (SAC at 27-28.) Plaintiff alleges that she fell, hit her head, and sustained a concussion on August 5, 2008, followed by constant excruciating headaches on a daily basis. (SAC at 4, 22.) She alleges that her head remained swollen for months and that she complained of her head injury, but was denied an MRI until January 23, 2013 (SAC at 4, Ex. A-5 at 23.) Around June or July 2015, plaintiff began to hear constant noise in her head and suffered from poor memory, lost cognitive function, and difficulty seeing. (SAC at 22.)

Plaintiff also alleges that she raised her need for OB/GYN care with MDC staff, but languished in pain for years before MDC hired an onsite OB/GYN in January 2012. (SAC at 5, 10.) Plaintiff suggests that this delay exacerbated her condition, ultimately requiring surgical treatment in March 2012. (SAC at 6, 10, Ex. C at 15-17.) Plaintiff claims that she thereafter was not sent to her follow-up appointment scheduled for 10-14 days after her surgery. (SAC at 6, 10-11, Ex. E at 12-14.)

Plaintiff states that she filed an SF-95 claim on May 24, 2016. (SAC at 38, Ex. A[2] at 39-40 (containing a signed SF-95 form dated May 24, 2016).) Plaintiff claims she gave this form to the FCI Aliceville staff on May 24, 2016 for mailing to the BOP's Office of General Counsel and that she gave a copy of this form to prison officials on June 10, 2016 for mailing to the BOP's Southeast Regional Office. (SAC at 38.)

Defendants argue that for plaintiff's FTCA claim to be timely, she should have presented her administrative claim to the BOP no later than October 22, 2015. (Mem. at 12.) This is because plaintiff's claims are based on allegations relating to her care at MDC Brooklyn from 2007 to through 2013, and plaintiff left the facility on October 22, 2013. (*Id.*) Defendants assert, however, that plaintiff's claims accrued earlier than October 22, 2013 because her allegations suggest that she was long aware of her injuries. (*Id.* at 13-14.) In the alternative, defendants argue that plaintiff's claims would be untimely even if the court treated February 24, 2014, the date plaintiff filed a regional administrative grievance appeal, as the date her claims accrued. (*Id.* at 14.)

Plaintiff argues that she "spent more than two years trying to get explanation as to her exact injuries[.]" (ECF No.

---

[2] The court notes that plaintiff's original complaint contained an unsigned SF-95 with the same date and lacking witnesses. (ECF No. 1, Complaint at 16.)

55, Plaintiff's Response to Defendants' Memorandum of Law ("Opp.") at 7.) She argues that her FTCA claim accrued "on or after July 15, 2015, after [she] received enough information . . . to determine that her injuries were real and her claim would not be frivolous[.]" (Opp. at 13.) Plaintiff argues that she did not learn of her injuries (poor concentration, poor memory, constant noise in her head) until two years before filing her claim. (Opp. at 33.) Plaintiff also describes health issues that developed as a result of her treatment at FCI-Aliceville when medical staff there stopped filling her hormone prescription. (Opp. at 13-14, 33; *see also* Compl. at 4 ("Doctor McCullar, the [FCI-Aliceville] staff physician stopped the contraceptive[] pills that were helping [plaintiff].").)

Plaintiff's allegations indicate that she was aware of injuries before she left MDC-Brooklyn. Plaintiff reported daily headaches and a swollen head as early as 2008 after she fell and suffered a head injury, suggesting that her claim accrued then. Even assuming that plaintiff's June or July 2015 symptoms of poor concentration, poor memory, and hearing of sounds were related to her 2008 head injury, these would be latent symptoms of a known, rather than unknown, injury. Plaintiff also stated the she suffered from pain for five years that she believed required medical attention from an OB/GYN. Although the fact that plaintiff experienced pain and reported it suggests that

she knew enough to protect herself, her injuries certainly became known when she was surgically treated in March 2012 at the New York Downtown Hospital.

Plaintiff believed she was injured and that the MDC Brooklyn staff contributed to her injuries, but did not begin the process of bringing a federal tort action by filing an SF-95 until May 24, 2016, well more than two years after she had left the facility and after anyone at MDC Brooklyn allegedly failed to sufficiently act.  Because the Northern District of Alabama severed the claims relating to actions occurring at MDC and FCI-Aliceville, the court does not address the plaintiff's allegations and arguments relating to the Aliceville claims.  For these reasons, defendants' motion to dismiss is granted regarding plaintiff's FTCA claims arising out of alleged acts or omissions at MDC.

## II.  Timeliness of *Bivens* Claims Against Individual Defendants

"Federal courts in New York apply a three-year statute of limitations period to *Bivens* claims."  *Kronisch v. United States*, 150 F.3d 112, 123 (2d Cir. 1998).  "While state law supplies the statute of limitations period, 'federal law determines when a federal claim accrues.'"  *Id.* (citing *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994)).  "A *Bivens* claim accrues under federal law for statute of limitations purposes when a plaintiff either has knowledge of

his or her claim or has enough information that a reasonable person would investigate and discover the existence of a claim." *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015).

"The continuing violation doctrine, where applicable, provides an 'exception to the normal knew-or-should-have-known accrual date.'" *Id.* (citing *Harris v. City of New York*, 186 f.3d 243, 248 (2d Cir. 1999). It does not apply to discrete unlawful acts, even where those discrete acts are part of a serial violation, but instead applies to "claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." *Id.* When the continuing violation doctrine applies, the limitations period starts to run when the defendant has "engaged in enough activity to make out an actionable . . . claim." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002). "To assert a continuing violation for statute of limitations purposes, the plaintiff must 'allege both the existence of an ongoing policy of [deliberate indifference to his or her serious medical needs] and some non-time-barred acts taken in the furtherance of that policy.'" *Shomo v. City of New York*, 579 F.3d 176, 182 (2d Cir. 2009) (citing *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999)).

Under the Prison Litigation Reform Act ("PLRA"), "federal prisoners suing under *Bivens v. Six Unknown Fed.*

*Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), must first exhaust inmate grievance procedures[.]" *Porter v. Nussle*, 534 U.S. 516, 524 (2002). "Exhaustion is no longer left to the discretion of the district court, but is mandatory." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). In addressing the question of whether a prisoner could satisfy the PLRA's exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal[, the Supreme Court] h[e]ld that proper exhaustion of administrative remedies is necessary." *Id.* at 83-84. "[T]he applicable three-year statute of limitations is tolled only during that exhaustion period and not during the period in between the accrual of [a plaintiff's] claims and when . . . [plaintiff] began the administrative remedy process." *Gonzalez v. Hasty*, 651 F.3d 318, 324 (2d Cir. 2011).

"The BOP has established a four-step administrative-remedies process that federal inmates must follow to meet the PLRA's exhaustion requirement." *Petrucelli v. Hasty*, 605 F. Supp. 2d 410, 419 (E.D.N.Y. 2009). The inmate must first "informally present an issue of concern to the staff, who shall then attempt to resolve the issue before the inmate submits a Request for Administrative Remedy." *Id.* (citing 28 C.F.R. § 542.13(a)). Second, if the informal resolution of the issue of concern does not satisfy the inmate, the inmate "must submit a

16

formal written Administrative Remedy Request on a BP-9 form 20 calendar days following the date on which the basis for a remedy request occurred." *Id.* (citing 28 C.F.R. § 542.14(a)). "Third, an inmate who is not satisfied with the warden's response may submit an appeal on a BP-10 form to the Regional Director within 20 calendar days of the date of the warden's signed response." *Id.* (citing 28 C.F.R. § 542.15). Fourth and finally, an inmate "who is not satisfied with the Regional Director's response may submit a final appeal on a BP-11 form to the General Counsel at the Central Office of Appeals within 30 calendar days of the Regional Director's signed response." *Id.* at 419-20. An inmate must use the correct forms, which are obtained from prison staff. *Id.* (citing 28 C.F.R. §§ 542.14(c), 542.15(b)).

Defendants argue that plaintiff's *Bivens* claims are untimely based on the date she filed her first complaint in federal court, May 26, 2016. (Mem. at 15.) Defendants argue that this conclusion is warranted based on the most generous potential accrual dates for plaintiffs' allegations regarding each individual defendant: June 30, 2012 for defendant Terrell; late March 2012 for defendant Newland; January 23, 2013 for defendant Rios; and May 6, 2013 for defendant Rosa. (Mem. at 17-21; ECF No. 62, Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss ("Reply") at 6-7.) However, in their arguments that plaintiff's FTCA claims are time-barred,

17

defendants note that plaintiff "attache[d] to her initial complaint a regional administrative remedy appeal dated February 24, 2014, wherein she state[d] that MDC Brooklyn had 'neglected to provide [her] with the proper medical care . . . .'" Mem. at 14 (citing Compl., Ex. G-6 at 35-36).

Moreover, plaintiff alleges that she attempted to exhaust her administrative remedies informally, the first step of the BOP's process, multiple times at MDC and that she received no response. (SAC at 31.) She further alleges that she was forced to wait until she was moved to FCI-Aliceville in Alabama to accomplish the proper filing of the administrative exhaustion process, and that she ultimately filed a BP-8, a BP-9, a BP-10, and a BP-11. (SAC at 55.)

Defendants have taken the position that plaintiff's *Bivens* claims should be dismissed because she failed to exhaust her remedies, but do not move on that basis because they believe plaintiff's claims are untimely. (Mem. at 21 n.11.) "'[F]ailure to exhaust is an affirmative defense under the PLRA,' and 'inmates are not required to specially plead or demonstrate exhaustion in their complaints.'" *Fernandini v. United States*, 2017 WL 3208587, at *6 (S.D.N.Y. July 26, 2017) (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)). Here, plaintiff has alleged that she filed four informal requests with the MDC staff between September 10, 2010, and December 24, 2011,

seeking medical treatment, but was not provided administrative remedy forms and, instead, was instructed to write more "cop outs." (SAC at 31.) Thus, plaintiff alleges that she exhausted her administrative remedies. Defendants have identified at least one form raising the question of whether plaintiff engaged in the administrative exhaustion process. Plaintiff's engagement in the administrative exhaustion process would have tolled the statute of limitations for her *Bivens* claims, but it is not clear from the parties' submissions whether tolling is applicable in this case and, if so, how long the limitations period should be tolled. Defendants also suggest that the exhaustion question should be addressed after the parties have engaged in limited discovery regarding plaintiff's attempts to exhaust her administrative remedies. (Mem. at 14 n.9, 21 n. 11.)

The court, therefore, denies defendants' motion to dismiss plaintiff's *Bivens* claims.

### III. First Amendment Retaliation Claims

"To the extent that a *Bivens* cause of action is available for First Amendment retaliation claims, such claims are subject to a three-year statute of limitations and accrue when the plaintiff 'either has knowledge of his or her claim or has enough information that a reasonable person would investigate and discover the existence of a claim.'" *Bouchard*

*v. Olmsted*, No. 18-1658, 2019 WL 2301868, at *1 (2d Cir. May 30, 2019) (citing *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015)).

Defendants argue that plaintiff's First Amendment retaliation claims are asserted against unnamed individuals or individuals who are not named defendants in this action. (Mem. at 21.) They further argue that plaintiff fails to state legally cognizable claims against those individuals and that any claims would be time barred. (*Id.*) Defendants argue that individual defendants may only be held liable under *Bivens* for their own conduct and not the conduct of others. (Reply at 9.)

Plaintiff argues that Counselor Cotton, Officers Marshall, Rodriguez, and Johnson harassed, threatened, and wrote fictitious reports regarding plaintiff. (Opp. at 28-29.) They also removed her phone privileges. (Opp. at 29.) Plaintiff argues that although this retaliatory conduct took place from approximately 2011 to 2013, she did not learn of or become diagnosed with her last injury until September 21, 2015. (Opp. at 29-30.) She argues that these claims are timely as part of a continuing violation based on the deliberate indifference toward her medical needs. (*Id.* at 30-31.)

Neither the Supreme Court nor the Second Circuit have clarified whether *Bivens* actions exist for First Amendment violations. Regardless, plaintiff has twice amended her

complaint since the MDC claims were severed from the FCI-
Aliceville claims and failed to add the would-be First Amendment
defendants as parties.  Plaintiff cannot revive untimely claims
against these individuals, based on the actions of the medical
staff.  For these reasons, the court dismisses the First
Amendment retaliation *Bivens* claims.

**CONCLUSION**

For the foregoing reasons, the court grants in part and denies in part defendants' motion to dismiss. The court dismisses plaintiff's FTCA claims and First Amendment *Bivens* and retaliation claims. Plaintiff's *Bivens* claims regarding her medical treatment at MDC remain. The government is directed to serve a copy of this order on the plaintiff. The parties are directed to confer and file a joint letter directed to Magistrate Judge Levy regarding their discovery needs and whether a settlement conference would be fruitful. The parties may subsequently file pre-motion conference letters regarding summary judgment or any other dispositive motions when appropriate.

**SO ORDERED.**


Dated:     September 23, 2019
           Brooklyn, New York


_____
           /s/
**HON. KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York